IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

NOV -9 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| JAMES CITY COUNTY, VIRGINIA,<br>a political subdivision of the<br>Commonwealth of Virginia,<br>101-C Mounts Bay Road,<br>Williamsburg, VA 23185,<br><br>    Plaintiff,<br><br>    v.<br><br>ERIC HOLDER,<br>Attorney General of the<br>United States of America;<br>THOMAS E. PEREZ,<br>Assistant Attorney General,<br>Civil Rights Division, United States<br>Department of Justice, Washington, DC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 1:11-cv-01425<br>)    Three-Judge Court (PLF-DST-TFH) |

## CONSENT JUDGMENT AND DECREE

1.    This action was initiated on August 5, 2011, by the Plaintiff James City County, Virginia ("James City County" or "the County"), against the Defendant Attorney General of the United States and the Defendant Assistant Attorney General, Civil Rights Division (collectively the "Attorney General").

2.    James City County is a governmental entity organized under the Constitution and laws of the Commonwealth of Virginia. The County is a political subdivision of the Commonwealth within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1).

3.    James City County is covered by the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c, based on a coverage determination for the

1

Commonwealth of Virginia under Section 4(b) made by the Attorney General and the Director of the Census, and published in the Federal Register. 30 Fed. Reg. 9897 (Aug. 7, 1965). By virtue of this coverage determination, James City County, and all of its governmental units, including the Williamsburg/James City County School Board ("School Board"), must receive preclearance under Section 5 of the Act for all changes that affect voting enacted or implemented after November 1, 1964.

4.  Through this action, the County seeks a declaratory judgment pursuant to the "bailout" provisions of Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1), declaring it exempt from coverage under Section 4(b) of the Act, 42 U.S.C. § 1973b(b). Bailout also exempts the jurisdiction from being subject to the preclearance provisions of Section 5 of the Act, 42 U.S.C. § 1973c.

5.  This three-judge district Court has been convened as provided in 42 U.S.C. § 1973b(a)(5) and 28 U.S.C. § 2284 and has jurisdiction over this matter.

6.  Section 4(a) of the Voting Rights Act provides that a political subdivision subject to the special provisions of the Act may be exempted or "bailed out" from those provisions through an action for a declaratory judgment before this Court if it can demonstrate fulfillment of the specific statutory conditions in Section 4(a) for both the ten years preceding the filing of the action, and throughout the pendency of the action. As set forth in Section 4(a)(1), the conditions the County must satisfy are as follows:

> (A) no such test or device has been used within such State or political subdivision for the purpose or with the effect of denying or abridging the right to vote on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section [42 U.S.C. § 1973b(a)(1)(A)];

2

(B) no final judgment of any court of the United States, other than the denial of declaratory judgment under this section, has determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere in the territory of such State or political subdivision or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) that denials or abridgements of the right to vote in contravention of the guarantees of subsection (f)(2) of this section have occurred anywhere in the territory of such State or subdivision and no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds; and no declaratory judgment under this section shall be entered during the pendency of an action commenced before the filing of an action under this section and alleging such denials or abridgements of the right to vote [42 U.S.C. § 1973b(a)(1)(B)];

(C) no Federal examiners or observers under subchapters I-A to I-C of this chapter have been assigned to such State or political subdivision [42 U.S.C. § 1973b(a)(1)(C)];

(D) such State or political subdivision and all governmental units within its territory have complied with section 1973c of this title, including compliance with the requirement that no change covered by section 1973c of this title has been enforced without preclearance under section 1973c of this title, and have repealed all changes covered by section 1973c of this title to which the Attorney General has successfully objected or as to which the United States District Court for the District of Columbia has denied a declaratory judgment [42 U.S.C. § 1973b(a)(1)(D)];

(E) the Attorney General has not interposed any objection (that has not been overturned by a final judgment of a court) and no declaratory judgment has been denied under section 1973c of this title, with respect to any submission by or on behalf of the plaintiff or any governmental unit within its territory under section 1973c of this title, and no such submissions or declaratory judgment actions are pending [42 U.S.C. § 1973b(a)(1)(E)]; and

(F) such State or political subdivision and all governmental units within its territory-- (i) have eliminated voting procedures and methods of election which inhibit or dilute equal access to the electoral process; (ii) have engaged in constructive efforts to eliminate intimidation and harassment of persons exercising rights protected under subchapters I-A to I-C of this chapter; and (iii) have engaged in other constructive efforts, such as expanded opportunity for convenient registration and voting for every person of voting age and the appointment of minority persons as election officials throughout the jurisdiction and at all stages of the election and registration process. [42 U.S.C. § 1973b(a)(1)(F)(i-iii)].

7. Section 4(a) also provides that the following additional requirements must be satisfied to obtain a bailout:

> (2) To assist the court in determining whether to issue a declaratory judgment under this subsection, the plaintiff shall present evidence of minority participation, including evidence of the levels of minority group registration and voting, changes in such levels over time, and disparities between minority-group and non-minority-group participation. [42 U.S.C. § 1973b(a)(2)].
>
> (3) No declaratory judgment shall issue under this subsection with respect to such State or political subdivision if such plaintiff and governmental units within its territory have, during the period beginning ten years before the date the judgment is issued, engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section unless the plaintiff establishes that any such violations were trivial, were promptly corrected, and were not repeated. [42 U.S.C. § 1973b(a)(3)].
>
> (4) The State or political subdivision bringing such action shall publicize the intended commencement and any proposed settlement of such action in the media serving such State or political subdivision and in appropriate United States post offices. [42 U.S.C. § 1973b(a)(4)].

8. Finally, Section 4(a)(9) provides that the Attorney General can consent to entry of a declaratory judgment granting bailout "if based upon a showing of objective and compelling evidence by the plaintiff, and upon investigation, he is satisfied that the State or political subdivision has complied with the requirements of [Section 4(a)(1)]." 42 U.S.C. § 1973b(a)(9).

9. The Attorney General has conducted a comprehensive and independent investigation to determine the County's entitlement to bailout. In so doing, he has, among other things, interviewed members of the local minority community, and reviewed a significant number of documents related to the County, including available background information and demographic data, minutes of the meetings of the James City County Board of Supervisors and

the Williamsburg/James City County School Board, records relating to voter registration and turnout in the County, and records of the County's preclearance submissions.

10. The Attorney General and James City County agree that the County has fulfilled the conditions required by Section 4(a) and is entitled to the requested declaratory judgment allowing it to bail out from coverage under Section 4(b). Accordingly, the County and the Attorney General have filed a Joint Motion for Entry of this Consent Judgment and Decree.

## AGREED FACTUAL FINDINGS

11. James City County is located on the Virginia Peninsula in the Hampton Roads metropolitan area of Virginia, about one hundred and fifty miles southeast of Washington D.C.

12. In addition to James City County, there is one governmental subdivision located within the County, the Williamsburg/James City County School Board, which is jointly operated by the City of Williamsburg and James City County. The School Board is a seven-member body comprised of five members elected from James City County and two members appointed by the City of Williamsburg City Council.

13. According to the 2010 Census, James City County has a total population of 67,009 persons, of whom 52,049 (77.7%) are non-Hispanic white, 9,111 are non-Hispanic black (13.6%), 3,024 (4.5%) are Hispanic and 1,889 (2.8%) are Asian. According to the 2010 Census, James City County has a voting-age population of 52,624, of whom 42,014 (79.8%) are non-Hispanic white, 6,700 (12.7%) are non-Hispanic black, 1,966 (3.7%) are Hispanic and 1,350 (2.6%) are Asian.

14. James City County is governed by a five-member County Board of Supervisors. The five-member Board of Supervisors is elected from five single-member districts. The supervisors are elected in partisan elections to four-year staggered terms, with three members

running in one election and the other two members running two years later.  The Board elects its Chairman each January at the Board's organizational meeting.   Currently, there are no minority members of the James City County Board of Supervisors.

15.     While there are currently no minority members on the James City County Board of Supervisors, Jay Harrison, a black candidate, won in 2003, and he served a four-year term, including one year as chairman. There are currently two minority members on the School Board, an Hispanic member, who was elected from the County, and a black member, who was appointed by the City of Williamsburg.  There have been a number of minority appointments to other significant positions within the County government, including citizens currently serving on the Planning Commission, the Parks and Recreation Commission (2), the Historical Commission, the Thomas Nelson Community College Local Board, the Social Services Advisory Board, the Colonial Group Home Commission (2), and the Economic Development Authority.

16.     Elections in James City County are conducted by the three-member Electoral Board and are administered by the County's General Registrar, who is appointed by the Electoral Board.  Pursuant to State law, the Electoral Board is appointed by the Circuit Court to oversee the election laws and other regulations established by the State Board of Elections.  Two Electoral Board members must be of the same political party that cast the highest number of votes for the Governor at the last election; the third member must be of the political party that cast the next-to-highest number of votes in the last gubernatorial election.  Each Electoral Board member serves a three-year term.

17.     Under Virginia law, the Electoral Board for each county is solely responsible for appointing poll workers, and local political parties are authorized to nominate poll workers where practicable. Va. Code Ann. § 24.2-115.  In practice, however, the local parties of James

6

City County do not nominate poll workers. In James City County, the County Registrar generally recruits the poll workers; however, the Electoral Board, the Parties and poll workers have nominated persons to be poll workers. From 2006 to 2010, the number of black poll officials has varied from twelve to twenty-four, or from about 6.7% to 11.8%, of the total number of poll workers, while the black voting age population is approximately 12.7%. During the last ten years, three of the Assistant General Registrars have been black. The County includes a poll worker recruitment flyer in mailings, such as those containing voter identification cards, and provides information on how to become an election official on the County website. Voter registration applications also have a box for a voter to check if he or she is interested in serving as a poll worker. There is currently a waiting list of persons available to be poll workers.

18. Since the County does not record the race of its registered voters, it is unable to present evidence directly measuring minority voter participation, but the County has provided evidence of voter participation for elections since 2001. Current data show, for example, that a significant proportion of the County's voting-age population is registered to vote. The number of persons registered to vote in the County as of April 2011 is 48,995, which is 93% of the County's 2010 voting age population of 52,624. Voter registration has increased slightly since April 2001, when the County had 34,205 registered voters, which was 92.7% of the County's 2000 voting age population of 36,889.

19. Voter turnout in the County over the past decade has varied depending upon the types of elections held. In the presidential election years of 2004 and 2008, voter turnout was consistently high, with 78% voter turnout for both the 2004 and 2008 presidential elections. Turnout for the last three statewide elections for Governor has been fairly consistent, ranging from 48.7% to 52.1%.

20. Voter registration opportunities, as well as opportunities to fully participate in the political process in James City County, are readily and equally available to all citizens. James City County residents may obtain an application to register to vote at any location within James City County that offers voter registration forms, including the County Voter Registration and Elections Office, all James City County libraries, and government agency offices. Voter registration forms are also available in the County at the Division of Motor Vehicle office, on the website of the State Board of Elections (which is also linked on the County's website), at all County post offices, and at all voting precincts on Election Day. The County Registrar's office is open from 8:00 a.m. to 5:00 p.m., Monday through Friday, as well as the two Saturdays prior to each general election and one Saturday before each primary or special election. Voter registration is also available by mail-in application.

21. The James City County Registrar has conducted voter registration outreach to offer the opportunity for more James City County residents to apply to register to vote. For example, the James City County Registrar works with the local high schools to register students who are eighteen or who will be eighteen by the November general election. In addition, the registrar makes efforts to recruit minority election officials, by contacting the political parties for help, having sign-up sheets in the polls, appearing at minority-sponsored events and churches, and asking leaders in the minority community to assist with recruitment. The registrar also regularly conducts training for persons interested in serving as poll officials.

22. James City County and Williamsburg/James City County School Board have made thirteen submissions to the Attorney General under Section 5 of the Voting Rights Act in the ten years preceding this action, and the Attorney General has not interposed an objection to any of these submissions. The Attorney General reviewed the records of James City County in

the course of considering the County's bailout request, and no voting changes were discovered in either the records of the James City County Board of Supervisors or the records of the Williamsburg/James City County School Board that had not been submitted for preclearance in a timely manner. Hence, the Attorney General's investigation indicates that the County has not enforced any voting changes prior to receiving preclearance during the previous ten years and during the pendency of this action.

23. The County has publicized the intended commencement of this action and a proposed settlement of the action as required by Section 4(a)(4) of the Act prior to its being filed. Notices of the bailout and bailout settlement were posted on the County's website, in all County post offices, and in County offices, the courthouse, and libraries. Notice of the bailout was also published in the <u>Daily Press</u> (a newspaper of general circulation in the region).

24. The Attorney General has determined that it is appropriate to consent to a declaratory judgment allowing bailout by the County, pursuant to Section 4(a)(9) of the Voting Rights Act. The Attorney General's consent in this action is based upon his own independent factual investigation of the County's fulfillment of all of the bailout criteria, and consideration of all of the circumstances of this case, including the views of minority citizens in the County and surrounding areas, and the absence of racial discrimination in the electoral process within the County. This consent is premised on an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that the statutory objectives of encouraging Section 5 compliance and preventing the use of racially discriminatory voting practices would not be compromised by such consent.

<u>AGREED FINDINGS ON STATUTORY BAILOUT CRITERIA</u>

25. James City County and the Williamsburg/James City County School Board are covered jurisdictions subject to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c. Under Section 5 of the Act, these governmental entities are required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices, and procedures adopted or implemented since the Act's coverage date. There are no other governmental units within the County's territory for which it is responsible or which must request bailout at the same time as the County, within the meaning of Section 4(a). 42 U.S.C. § 1973b(a).

26. During the ten years preceding the filing of this action and during the pendency of this action, there has been no test or device as defined in Section 4(c) of the Voting Rights Act used within the County for the purpose or with the effect of denying or abridging the right to vote on account of race or color. During the relevant time period there is also no indication that any person in the County has been denied the right to vote on account of race or color. 42 U.S.C. § 1973b(a)(1)(A).

27. During the ten years preceding the filing of this action, and during the pendency of this action, no final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred anywhere in the County. Further, no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds. No action is presently pending alleging such denials or abridgements of the right to vote. 42 U.S.C. § 1973b(a)(1)(B).

28. During the ten years preceding the filing of this action, and during the pendency of this action, no federal examiners or observers have been assigned to James City County. 42 U.S.C. § 1973b(a)(1)(C).

29. During the ten years preceding this action, and during the pendency of this action, James City County and the Williamsburg/James City County School Board made thirteen administrative submissions to the Attorney General for review under Section 5, and the Attorney General did not object to any of these submissions. Moreover, there is no evidence that the County or School Board enforced any changes that had an actual effect on voting in elections prior to receiving preclearance under Section 5. 42 U.S.C. § 1973b(a)(1)(D).

30. During the ten years preceding the filing of this action, and during the pendency of this action, there has been no need for the County or the School Board to repeal any voting changes to which the Attorney General has objected or to which this Court has denied a declaratory judgment, since no such objection or denials have occurred. 42 U.S.C. § 1973b(a)(1)(D).

31. During the ten years preceding this action, and during the pendency of this action, the Attorney General has not interposed any objection to voting changes submitted by or on behalf of the County or the School Board for administrative review under Section 5. No such administrative submissions by or on behalf of the County or the School Board are presently pending before the Attorney General. Neither the County nor the School Board has ever sought judicial preclearance from this Court under Section 5. Thus, this Court has never denied the County or the School Board a declaratory judgment under Section 5, nor are any such declaratory judgment actions now pending. 42 U.S.C. § 1973b(a)(1)(E).

32. During the ten years preceding the filing of this action, and during the pendency of this action, neither the County nor the School Board has employed methods of election which inhibit or dilute equal access to the electoral process. 42 U.S.C. § 1973b(a)(1)(F)(i).

11

33. During the ten years preceding the filing of this action, and during the pendency of this action, there is no evidence that anyone participating in elections in the County has been subject to intimidation or harassment in the course of exercising rights protected under the Voting Rights Act. Constructive steps have been undertaken by the County to avoid intimidation or harassment in elections, such as by the appointment of a diverse group of poll officials in elections in the County. 42 U.S.C. § 1973b(a)(1)(F)(ii).

34. All voter registration and all elections in the County have been conducted solely by the Electoral Board and Registrar throughout the ten years preceding the filing of this action and through the present time. There is evidence of constructive efforts by the Electoral Board and Registrar to expand the opportunity for convenient registration and voting for every person of voting age. The numerical evidence indicates that the Registrar has appointed minority citizens to serve as poll officials in elections in the jurisdiction. 42 U.S.C. § 1973b(a)(1)(F)(iii).

35. The County has presented available information regarding rates of voter registration and voter participation over time. 42 U.S.C. § 1973b(a)(2).

36. During the ten years preceding the filing of this action, and during the pendency of this action, neither the County nor the School Board has engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color. 42 U.S.C. § 1973b(a)(3).

37. James City County has provided public notice of its intent to seek a declaratory judgment under Section 4(a) of the Act, as well as its intention to reach a settlement of the bailout action with the Attorney General. Additionally, notices of the bailout and bailout settlement were also posted on the County's website, as well as in County offices, the

courthouse, and libraries. Notice of the bailout and the County's intention to reach a settlement of the bailout action were published in the <u>Daily Press</u>. 42 U.S.C. § 1973b(a)(4).

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:

1. The plaintiff James City County is entitled to a declaratory judgment in accordance with Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1).

2. The parties' Joint Motion for Entry of Consent Judgment and Decree is GRANTED, and the plaintiff James City County and the Williamsburg/James City County School Board are exempted from coverage pursuant to Section 4(b) of the Voting Rights Act, 42 U.S.C. § 1973b(b), provided that this Court shall retain jurisdiction over this matter for a period of ten years pursuant to Section 4(a)(5), 42 U.S.C. § 1973b(a)(5). This action shall be closed and placed on this Court's inactive docket, subject to being reactivated upon application by either the Attorney General or any aggrieved person in accordance with the procedures set forth in Section 4(a)(5), 42 U.S.C. § 1973b(a)(5).

3. Each party shall bear its own costs.

Entered this 9th day of November, 2011.

_____
UNITED STATES CIRCUIT JUDGE

_____
UNITED STATES DISTRICT JUDGE

_____
UNITED STATES DISTRICT JUDGE

*Agreed and Consented To:*

 

*/s/ J. Gerald Hebert*
J. GERALD HEBERT
D.C. Bar No. 447676
191 Somervelle Street, #405
Alexandria, Virginia 22304
Telephone: (703) 628-4673
hebert@voterlaw.com


LEO P. ROGERS
County Attorney for James City County
101-C Mounts Bay Road
Williamsburg, Virginia 23188
(757) 253-6614
lprogers@james-city.va.us
VA Bar No. 28906

*Counsel for Plaintiff*
*James City County, Virginia*

Dated: October 3, 2011

*Agreed and Consented To:*

 

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

RONALD C. MACHEN, JR.
United States Attorney
District of Columbia


*/s/ Robert Popper*
T. CHRISTIAN HERREN, JR.
ROBERT POPPER
robert.popper@usdoj.gov
CHRISTY MCCORMICK
christy.mccormick@usdoj.gov
T. RUSSELL NOBILE
t.russell.nobile@usdoj.gov
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
Room 7254 NWB
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone: (800) 253-3931
Facsimile: (202) 307-3961

*Counsel for Defendants*
*Eric H. Holder, Jr.,*
*Attorney General of the United States,*
*and Thomas E. Perez,*
*Assistant Attorney General,*
*Civil Rights Division*

Dated: October 3, 2011